```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| BOUBACAR KEITA, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WILLIAM BARR, et al. | : | NO. 19-980 |

                          MEMORANDUM

Bartle, J.                                   October 25, 2019

       Plaintiffs Boubacar Keita and Madina Bocoum bring this action for declaratory relief under the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701 *et seq.*, for review of a decision of the Board of Immigration Appeals (the "BIA").[1] The BIA denied an I-130 petition Keita filed with the United States Citizenship and Immigration Service (the "USCIS") to adjust the immigration status of his alien spouse, Bocoum.[2] Plaintiffs seek to set aside the BIA's decision, or, in the alternative, remand the matter back to the BIA for proper consideration under its

---

1. Where there is no statute creating a specific cause of action for judicial review of an agency action, the Congress has provided a general cause of action under the APA. 5 U.S.C. § 703. Such an action may take the form of an action for declaratory relief. Id.; see also R.I. Dep't of Envtl. Mgmt. v. United States, 304 F.3d 31, 42 (1st Cir. 2002).
2. Keita names as defendants: (1) Kathleen Bausman, Philadelphia Field Office Director, United States Citizenship and Immigration Services; (2) Lee Francis Cissna, Former Director, United States Citizenship and Immigration Services; (3) Kirstjen Nielsen, Former Secretary of Homeland Security;(4) William Barr, United States Attorney General, and (5) MaryBeth T. Keller, Former Chief United States Immigration Judge, Board of Immigration Appeals, who we will refer to collectively as "defendants."

own standard of review.³  Before the court are the cross motions of the parties for judgment on the administrative record.

I

We begin with the relevant facts in the administrative record before us.  Bocoum entered the United States in 2000 as a nonimmigrant visitor for pleasure.  It is not clear from the administrative record when Bocoum met Keita.  However, birth records show that they had children together in 2001 and 2002.

Keita, a native from Mali, was naturalized as a citizen of the United States on May 28, 2014.  Keita was married to Chasidy Shatrina Davis at the time.  He divorced Davis on April 15, 2015.  Keita married Bocoum on August 10, 2015, a few months after his divorce from Davis.  On October 16, 2015, Keita filed an I-130 petition seeking to adjust Bocoum's immigration status to that of the spouse of a United States citizen under Section 201(b) of the Immigration and Naturalization Act (the "INA"), 8 U.S.C. § 1151(b).

---

3.  Plaintiffs complaint and motion papers argue that we should grant declaratory relief on the ground that there was not substantial and probative evidence supporting the defendants' decision to deny Keita's petition.  Whether there was substantial and probative evidence supporting the denial of Keita's petition was the question before the BIA.  As discussed below, the question before us is whether the BIA's decision was arbitrary, capricious, an abuse of discretion or otherwise against the law.  It is only under this standard that we may provide the declaratory relief plaintiffs request.

On February 9, 2016, Keita and Bocoum appeared for an interview at the Philadelphia Field Office of the USCIS. Philadelphia Field Office Director Kathleen Bausman issued a notice of the USCIS's intention to deny ("NOID") Keita's I-130 petition on May 24, 2017. Director Bausman explained that approval of Keita's petition was prohibited under Section 204(c) of the INA, 8 U.S.C. § 1154(c), because Bocoum previously had married Seyba Diaoune, another United States citizen, for the purpose of evading immigration laws.

Bocoum married Diaoune on October 14, 2009. Diaoune also filed an I-130 on Bocoum's behalf. The USCIS, in connection with this first petition, interviewed Bocoum and Diaoune. During separate interviews, conducted under oath on July 7, 2010, several inconsistencies came to light.

On the Form G-325A Diaoune submitted with his I-130 petition, he provided certain background information to the USCIS. Diaoune stated that since their marriage in October 2009, he lived with Bocoum in an apartment in Upper Darby, Pennsylvania. He also stated that he worked for Delta Global at the Philadelphia Airport. Diaoune also provided a lease agreement which listed Bocoum and him as co-lessees of the Upper Darby apartment. However, during the July 7, 2010 interview, Diaoune admitted under oath that he did not live in the Upper Darby apartment. Rather, he had been living and

-3-

working in Utah since February 2010, two months before he submitted his I-130 petition.

The USCIS also questioned Diaoune as to why his name and initials in the lease agreement appeared to be on top of erasures. Diaoune explained that when Bocoum moved into the Upper Darby apartment her name replaced that of his former co-lessee, Soungoutoumba Macalou, on the lease. The USCIS contacted the landlord at the Upper Darby apartment, Mohammed M. Khan. Khan stated that Keita (not Diaoune) lived in the Upper Darby apartment with Bocoum, signed the original lease agreement and had lived there for several years. The administrative record contains a single lease for the Upper Darby apartment. It is from 2006. Keita is the only listed tenant.

Bocoum and Diaoune were also inconsistent with certain details about their relationship. For example, Bocoum was unfamiliar with the dates and duration of Diaoune's extended travel outside of the United States. When asked what they had given one another for their most recent birthdays, Bocoum and Dioune provided separate and contradictory answers.

The USCIS issued a NOID informing Diauone of its intention to deny his I-130 petition. In the NOID, Philadelphia Field Office Director Evangelia Klapakis explained that Diaoune failed to prove that his marriage to Bocoum was bona fide. The

NOID detailed the inconsistencies in Diauone's petition and his July 7, 2010 interview. Diaoune responded to the NOID explaining that his work in Utah was temporary and he always intended to return to Pennsylvania. He also submitted several affidavits from friends and relatives attesting to the bona fide nature of his marriage to Bocoum.

In addition, Diaoune also provided an affidavit from Khan. Khan stated in the affidavit that he never told the USCIS officers that Bocoum lived in the Upper Darby apartment with Keita. Keita lived there alone and moved out in October 2008 just before Diaoune moved in. Kahn explained that there were erasures on the lease because he used a form lease he received from his friend and whited out the names.

The USCIS issued a second NOID informing Diaoune that it still intended to deny Diaoune's petition. One of the affidavits Diaoune submitted was purportedly signed by Hawa Traore and notarized in the United States on July 5, 2011. According to the USCIS's records, Traore was residing in Africa on July 5, 2011. Other affidavits were from distant relatives and related to interactions with Bocoum and Diaoune on the same few days. Finally, the USCIS found that Kahn's affidavit directly contradicted the statements he previously made to USCIS officers.

For these reasons, the USCIS did not credit the affidavits Dioune submitted in support of his petition and denied it on July 2, 2014. Diaoune filed an appeal with the BIA, which the BIA dismissed on February 24, 2015. Keita's divorce from Davis was finalized less than two months later.

During a second investigation into Bocoum's marriage to Diaoune the USCIS conducted in connection with Keita's I-130 petition, the USCIS determined that Keita was living with Bocoum during her marriage to Diaoune and was in a romantic relationship with Bocoum throughout. Keita maintained the Upper Darby apartment address on his Pennsylvania driver's license and listed it on his tax returns. Bocoum's car was also registered in Keita's name at the Upper Darby address. The USCIS listed these reasons for denying Keita's petition in the May 24, 2017 NOID.

Keita responded to the May 24, 2017 NOID explaining that he lived in Georgia during Bocoum's marriage to Diaoune and that the two maintained only a platonic relationship for the benefit of their children. Keita submitted several notices and letters sent to him from the USCIS Atlanta Field Office between June 2009 and March 2010. On this correspondence, the USCIS listed an Athens, Georgia address for Keita. Keita also provided a letter from Hawa Traore and the notary who witnessed

her July 5, 2011 affidavit, Alou Traore. They explained that they misdated the affidavit.

The USCIS ultimately denied Keita's I-130 petition on October 10, 2017. Keita appealed to the BIA for de novo review of the USCIS's decision.

The BIA determined that there was insufficient evidence in the administrative record to support the USCIS's conclusion that Keita maintained a romantic relationship with Bocoum during her marriage to Diaoune. The BIA further accepted that Keita continued to use the Upper Darby address for tax purposes so that he could maintain his Pennsylvania driver's license at a time when he lacked legal immigration status. Finally, the BIA credited the letters from Alou and Hawa Traore, accepting that Hawa Traore's July 5, 2011 was inadvertently misdated.

Nonetheless, the BIA found substantial and probative evidence that Bocoum's marriage to Diaoune was for the purpose of evading immigration laws. The BIA relied in part on a summary of findings the USCIS prepared after conducting a site visit at the Upper Darby apartment on August 2, 2012. Bocoum lied to the USCIS officers who visited her home. She told them Diaoune lived at the Upper Darby apartment with her but was not home because he was at work at the Philadelphia International Airport. The officers contacted Diaoune's workplace. He was

not on shift at the time of the visit.  During the visit, Bocoum also represented to the USCIS officers after they inquired that Diaoune did not leave the United States until two weeks after they married.  Diaoune in fact left the country the day after their wedding.

Bocoum attempted to explain these inconsistencies in an affidavit she signed after the site visit.  She explained that she and Diaoune had separated.  She stated she lied because she was nervous, and the officers caught her off guard.  She also noted that the officers never asked her about Diaoune's travels after the wedding.  The BIA did not credit her explanations.

For these and other reasons,[4] the BIA found that there was substantial and probative evidence supporting the USCIS's determination that Bocoum married Diaoune for the purpose of evading immigration laws.

II

We have jurisdiction to review final orders of the BIA — other than orders of removal — under 28 U.S.C. § 1331.  Eid v.

---

4.  The BIA also concluded that Keita "on appeal has not identified evidence showing significant commingling of assets during [Diaoune's] and [Bocoum's] marriage. Also, the photographs submitted depict only three different occasions when [Diaoune] and [Bocoum] were in each other's presence."

Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (citing Chehazeh v. Att'y Gen., 66 F.3d 118, 139 (3d Cir. 2012).

Our review of final decisions of the BIA is governed by the APA. Under the APA, we may set aside an agency's action only if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Generally, an agency's action is arbitrary and capricious only where

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given.

CBS Corp. v. FCC, 663 F.3d 122, 137 (3d Cir. 2011) (internal quotations omitted) (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

We do not substitute our judgment for that of the agency. Id. Rather, our task in reviewing a BIA decision is to determine only if "a reasonable mind might accept [the evidence] as adequate to support" the BIA's conclusion. Smith v. Holder, 487 F. App'x 731, 733 (3d Cir. 2012)(internal quotations

-9-

omitted). In performing this task, our review is limited to the administrative record. Camp v. Pitts, 411 U.S. 138, 142 (1973). We cannot accept post hoc rationalizations for an agency's action. State Farm, 463 U.S. at 50.

We focus our review on the BIA's decision to dismiss Keita's appeal, which constitutes the final agency action on Keita's petition. 5 U.S.C. § 704; see also Embassy of the Blessed Kingdom of God for all Nations Church v. Attorney Gen. U.S., 591 F. App'x at 161, 164 (3d Cir. 2014).

III

We now turn to an overview of the relevant statutory and regulatory framework governing Keita's petition. Under the INA, a United States citizen who seeks to gain lawful permanent resident status for an alien spouse must begin the process by filing an I-130 petition with the USCIS on behalf of that spouse. 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1), 204.2(a). However, the Congress has prohibited the Attorney General, and by extension a USCIS director, from approving an I-130 petition when the alien spouse has previously entered a fraudulent marriage for the purpose of avoiding the immigration laws. 8 U.S.C. § 1154(c). Section 1154(c) provides:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse

> of an alien lawfully admitted for permanent
> residence, by reason of a marriage
> determined by the Attorney General to have
> been entered into for the purpose of evading
> the immigration laws, or (2) the Attorney
> General has determined that the alien has
> attempted or conspired to enter into a
> marriage for the purpose of evading the
> immigration laws.

Id.

Generally, a petitioner seeking benefits under the INA has the burden to establish "that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication." 8 U.S.C § 1361; 8 C.F.R. § 103.2(b)(1); Embassy of the Blessed Kingdom of God for all Nations Church, 591 F. App'x at 162. However, the USCIS initially has the burden of coming forward with evidence of prior marriage fraud when denying an I-130 petition under Section 1154(c). See 8 C.F.R. §§ 204.2(a)(1)(ii), 103.2(b)(8)(iv); Salvador v. Sessions, Civil Action No. 18-1608, 2019 WL 1545182, at *3 (E.D. Pa. Apr. 9, 2019); Zemeka v. Holder, 989 F. Supp. 2d 122, 130 (D.D.C. 2013); Matter of Singh, 27 I. & N. Dec. 598, 605, 2019 WL 4054424 (B.I.A. Aug. 23, 2019); Matter of Kahy, 19 I. & N. Dec. 803, 806-07, 1988 WL 235464 (B.I.A. Nov. 23, 1988).

If the USCIS discovers evidence supporting marriage fraud, it will issue a notice of intent to deny, inform the petitioner of its reasons for denial, and allow the petitioner

to present rebuttal evidence.  <u>Salvador</u>, 2019 WL 1545182, at *3; <u>see</u> <u>also</u> 8 C.F.R. §§ 103.2(b)(8)(iv), 103.2(b)(16)(i).  The NOID must "specify the type of evidence required, and whether initial evidence or additional evidence is required, or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond."  8 C.F.R. § 103.2(b)(8)(iv).

Once the USCIS issues a NOID, the burden of proof is on the petitioner to establish that the prior marriage was not entered for the purpose of evading immigration laws.  <u>Zemeka v. Holder</u>, 989 F. Supp. at 130; <u>Salvador</u>, 2019 WL 1545182, at *3; <u>Matter of Singh</u>, 27 I. & N. Dec. at 605; <u>Matter of Kahy</u>, 19 I. & N. Dec. at 806.  The USCIS may then deny an I-130 petition where there is substantial and probative evidence of marriage fraud.  8 C.F.R. § 204.2(a)(1)(ii).

Our Court of Appeals defines substantial evidence as "more than a mere scintilla . . . of relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion."  <u>Obianuju Ezeagwuna v. Ashcroft</u>, 301 F.3d 116, 126 (3d Cir. 2002)(internal quotations omitted)(quoting <u>Senathirajah v. INS</u>, 157 F.3d 210, 216 (3d Cir. 1998).

IV

In Count I of the complaint, plaintiffs argue that substantial and probative evidence does not support a finding of

fraud as to the marriage of Diaoune and Bocoum.  Specifically, plaintiffs assert that "[d]efendants have never presented any actual evidence linking Plaintiff Bocoum to any immigration fraud."[5]

Direct evidence is not required for there to be substantial and probative evidence of marriage fraud.  Salvador, 2019 WL 1545182, at *4 (Quansah v. Sessions, Civil Action No. 17-4334, 2018 WL 401791, at *6 (E.D. Pa. Jan. 12, 2018)); see also Atieh v. Riordan, 797 F.3d 135, 140 (1st Cir. 2015); Omokoro v. Hamilton, 688 F. App'x 263, 264 (5th Cir. 2017).  The quality and quantity of circumstantial evidence may be enough to support a strong inference of fraud which rises to the level of substantial and probative evidence.  Matter of Singh, 27 I. & N. Dec. at 608.  A particularly strong indication of fraud is evidence that a petitioner or alien spouse attempted to mislead immigration officials about their cohabitation.  Id. at 609. Reports of USCIS field investigations and on-site visits can be important indicators of fraud.  Id.

In April 2010, Diaoune attempted to mislead the USCIS about his cohabitation with Bocoum in the same paperwork he submitted to adjust her immigration status.  He stated that he

---

5.  Plaintiffs do not set out separate causes of action in the counts listed in their complaint.  Rather, each count sets out a separate argument in support of a single cause of action for declaratory relief.

lived in Pennsylvania with Bocoum and worked at the Philadelphia International Airport.  During an interview at the Philadelphia USCIS Field Office, under oath and separate from Bocoum, he admitted that he did not live in Pennsylvania.  He lived in Utah.  In fact, he was living there when he completed the paperwork in which he represented otherwise.

In August 2012, Bocoum attempted again to mislead USCIS officers.  This time the officers were conducting a site visit at the Upper Darby apartment.  Though Diaoune was not living with her, Bocoum stated that he was not home because he was at work at the Philadelphia International Airport.  The USCIS was able to determine Diaoune was not on shift during the site visit.  Bocoum later admitted she lied and the two were seperated.  A reasonable mind could accept these repeated attempts to mislead the USCIS as evidence that Bocoum's marriage to Diaoune was for the purpose of evading immigration laws.  The BIA's conclusion was supported by substantial and probative

evidence and was not arbitrary, capricious or an abuse of discretion.[6]

V

In Count II of the complaint, plaintiffs appear to argue that defendants inferred fraud only from the fact that Bocoum was separated from Diaoune when USCIS officers conducted the August 2012 field visit.  This is incorrect.

Defendants did not rely solely on evidence of Bocoum's separation from Diaoune in August 2012.  Defendants relied on the fact that the two attempted to mislead the USCIS about their cohabitation on two occasions, years apart.  In April 2010, Diaoune lied that he lived with Bocoum in Philadelphia on the biographical information form he submitted with his I-130 petition.  He admitted at his July 7, 2010 interview that he lived and worked in Utah.  In August 2012, Bocoum lied to USCIS officers, stating that Diaoune lived with her at the Upper Darby apartment.  Bocoum later admitted that Diaoune did not live with

---

6.  Plaintiffs raise a new argument in their response to defendants' motion.  In August 2019, several months after this action was commenced, the BIA interpreted the "substantial and probative" language contained in 8 C.F.R. § 204.2 to require proof somewhat greater than the preponderance of the evidence.  See Matter of P. Singh, 27 I. & N. Dec. 598.  Plaintiffs request the case be remanded to the BIA for consideration under the standard articulated in Matter of P. Singh.  There is no indication in this case that the BIA applied the wrong standard of proof.  The BIA found that there was substantial and probative evidence that Bocoum's marriage to Diaoune was for the purpose of evading immigration laws.

her. As noted, a particularly strong indication of fraud is evidence that a petitioner or alien spouse attempted to mislead immigration officials about their cohabitation. Matter of Singh, 27 I. & N. Dec. at 609. The couple lied about their cohabitation on two occasions. This is what informed the USCIS's decision to deny Diaoune's petition under Section 1154(c).

VI

In Count III of the complaint, plaintiffs appear to argue that defendants are collaterally estopped from denying Keita's petition on the ground of the prior marriage fraud by Bocoum because defendants already implicitly determined that there was no prior marriage fraud in connection with Diaoune's earlier petition. Specifically, defendants necessarily found no fraud by determining Bocoum's marriage was not bona fide. According to plaintiffs' reasoning, such a decision means that defendants necessarily found no fraud.

For collateral estoppel to apply: (1) the issue sought to be precluded must be the same as the issue involved in the first judicial proceeding; (2) the issue must have actually been litigated in the first proceeding; (3) the party against whom collateral estoppel is being asserted must have had a full and fair opportunity to litigate the issue in the first proceeding; and (4) the issue must have been essential to a final and valid

-16-

judgment in the first proceeding.  In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992) (citations omitted); see also Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency, 126 F.3d 461, 475 (3d Cir. 1997).  Plaintiffs' argument is without merit.  Simply put, a finding that a marriage is not bona fide is not a finding that the marriage was not fraudulent.

VII

Plaintiffs appear to claim generally that the USCIS violated their due process rights under the Fifth Amendment.

Due process in the context of adjudicating immigration matters entitles an alien to: (1) fact-finding based on a record produced before the decision maker and provided to the alien; (2) the opportunity to make arguments on his or her behalf; and (3) the right to an individualized determination as to his or her own interests.  Salvador, 2019 WL 1545182, at *5 (citing Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001)).

In this case, the USCIS and the BIA provided the requisite due process.  The USCIS interviewed plaintiffs and performed a separate investigation into the circumstances surrounding Bocoum's marriage to Diaoune.  The USCIS issued a notice of its intention to deny Keita's petition.  In the notice, the USCIS detailed its reasons for denying Keita's petition.  Keita was provided with the opportunity to respond to the NOID and responded with additional documentation.  The USCIS

investigated the evidence submitted in response to its notice of denial and subsequently provided a written decision based on evidence in the record.

Plaintiffs appealed the USCIS's decision to the BIA, which performed a de novo review of the administrative record after the parties submitted briefing. The BIA dismissed the appeal in a written decision which discussed its separate review of the administrative record. Notably, the BIA discussed which of the USCIS's conclusions were supported by the record and which were not and concluded that the record contained substantial and probative evidence supporting the USCIS's marriage fraud finding. Defendants provided ample due process under the Fifth Amendment.

## VIII

Finally, plaintiffs appear to claim that the USICS violated their due process rights by not producing the statement of findings completed by the USCIS after the August 2012 site visit until defendants filed the certified record in this case.

The USCIS is prohibited from making a statutory determination based on information it has not disclosed to a petitioner. 8 C.F.R. 103.2(b)(16)(ii). A petitioner must be shown "derogatory information unknown" to him or her. Id. However, the USCIS is not required to produce internal documents in their original form. See Zizi v. Bausman, 306 F. Supp.

3d 697, 704 (E.D. Pa. 2018)(citing Sehgal v. Lynch, 813 F.3d 1025, 1031 (7th Cir. 2016). The USCIS provided plaintiffs with a detailed summary of its reasons for denying Keita's petition in the May 24, 2017 NOID. This summary included details of its subsequent investigation into the marriage between Bocoum and Diaoune and the factual conclusions drawn from that investigation. The USCIS therefore met its obligation under 8 C.F.R. 103.2(b)(16)(ii).

IX

For the above reasons, we will grant the motion of defendants for judgment on the administrative record and deny the motion of plaintiffs for judgment on the administrative record.